UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDALKARIM AL KHATIB,<br><br>                                Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security; PAMELA JO BONDI, Attorney General; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director, San Diego Field Office; CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,<br><br>                                Respondents. | Case No.:  25cv02978-LL-VET<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Pending before the Court is Petitioner Abdalkarim Al Khatib's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1), **DENIES AS MOOT** the Motion for Temporary

1  Restraining Order (ECF No. 3), and **ORDERS** Petitioner's immediate release from
2  custody.

3  **I.      BACKGROUND**

4        Petitioner is a Palestinian, born in the West Bank, who moved to the United States
5  in 1996. ECF No. 1-2 ("Al Khatib Decl.") ¶¶ 1-3. That same year, he married his wife, a
6  United States citizen, and obtained a green card. *Id.* at ¶ 3. In 2002, he was convicted of a
7  domestic violence offense, and on July 29, 2004, he was ordered removed. *Id.* at ¶ 4. He
8  was detained for "around two and a half months" and was released the same year when
9  Palestine and Jordan failed to issue him travel documents. *Id.* at ¶ 5. Petitioner alleges that
10 since he was released from ICE custody in 2004, he complied with all check-in
11 appointments and did not have any other convictions. *Id.* at ¶¶ 6, 8. Petitioner alleges that
12 while he was on release, in 2016, "after President Trump was elected for the first time, ICE
13 put an ankle monitor on [him]." *Id.* at ¶ 7. Petitioner alleges that he wore the ankle monitor
14 for two years and did not have any violations. *Id.* Petitioner further alleges that "earlier this
15 summer," he checked in with ICE as scheduled and "ICE put [him] on an ankle monitor
16 and told [him] to come back in a few weeks." *Id.* at ¶ 9. When he went back for his
17 scheduled ICE check-in on June 16, 2025, ICE arrested him and detained him. *Id.*

18       Petitioner argues that "ICE followed none of its substantive or procedural regulatory
19 prerequisites to re-detention or continued detention here." ECF No. 1 ("Petition") at 15.
20 Specifically, Petitioner alleges that "ICE did not notify Mr. Al Khatib of the reasons for
21 his re-detention 'upon revocation' of release." *Id.* Petitioner states that "ICE provided its
22 first notification of why it was re-detaining him, in a language that he has 'hard a time
23 communicating in,' on October 28, 2025, three and a half months after it revoked its
24 release." *Id.* (citing Al Khatib Decl. at ¶ 12). Second, Petitioner alleges that "ICE does not
25 have a proper reason to re-detain Mr. Al Khatib [because] there is no reason to think that
26 there is a 'significant likelihood that [he] may be removed in the reasonably foreseeable
27 future' 241.13(i)(2), and he has not 'violate[d] any of the conditions of release.'
28 241.13(i)(1)." Petition at 15. Third, Petitioner also argues that his informal interview,

25cv02978-LL-VET

scheduled on the same date of his filing (November 3, 2025), was not prompt. *Id.* at 15. These failings, Petitioner argues, violated ICE's own regulations which state that:

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*See* 8 C.F.R. §§ 241.13(i)(2)–(3), 241.4(l).

On November 3, 2025, Petitioner sought his release through a writ of habeas corpus on three grounds: (1) that he was denied an explanation, interview, and chance to respond when he was re-detained, violating ICE's rules and his constitutional due process rights; (2) that his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001) and 8 U.S.C. § 1231; and (3) that ICE may seek to remove him a third country without notice and an opportunity to be heard. Petition at 13-27. Petitioner moved for appointed counsel, and a temporary restraining order. ECF Nos. 2, 3. The Court has granted his request for counsel, appointing Federal Defenders of San Diego, Inc. to represent him. The Court finds that its order on the first claim (due process) is dispositive, and therefore declines to rule on claims two (*Zadvydas*) and three (removal to a third country).

## II.    DISCUSSION

### A.    Due Process

The Court finds that the Government has violated its own regulations under § 241.13(i) and § 241.4(l). First, ICE must determine that the detainee is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances." § 241.13(i)(2). The Government asserts that "as explained in his Notice of Revocation of Release, ICE determined that it can expeditiously remove [Petitioner] to the West Bank" and that "[w]hile detained, Petitioner completed travel forms at ICE's request." Oppo. at 3. Specifically, the Government states that "on September 11, 2025, ICE sent the travel

25cv02978-LL-VET

1  paperwork to Palestinian authorities, requesting it to issue a travel document for Petitioner,

2  and to the government of Israel, requesting it to allow Petitioner to fly into its airport and

3  be transported to the West Bank." *Id.* at 3-4 (citing Decl. of Vera at ¶ 10). Respondents

4  concede that "ICE has not yet received a response from the Palestinians or Israel." (Oppo.

5  at 4 (citing Decl. of Vera at ¶ 11). However, the Government still argues that "removal

6  remains reasonably foreseeable as evidenced by ICE's recent success securing travel

7  arrangements to effectuate the removal of five Palestinians to the West Bank [on November

8  23, 2025]." Oppo. at 4 (citing Decl. of Vera at ¶ 12).

9      "241.13(i)(2) requires that [the changed circumstances] determination is made

10 before the removable alien has had his release revoked." *See Tran v. Noem*, No. 25-cv-

11 2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025). Here, ICE did not

12 even request travel documents from Palestine or Israel until three months after it revoked

13 Petitioner's supervision. Accordingly, there could not have been "changed circumstances"

14 that "there is a reasonable likelihood that the alien may be removed in the foreseeable

15 future." § 241.13(i)(2). Additionally, neither Israel nor Palestine have responded to the

16 travel requests sent to them, even though two months have passed since ICE sent them the

17 travel paperwork. Oppo. at 4 (citing Vera Decl. ¶ 12). Accordingly, even if ICE assessed

18 the likelihood of Petitioner's removal before revoking his release, it would not have been

19 "on account of" changed circumstances. With "no evidence of an actual determination of

20 changed circumstances that justified the initial revocation of [Petitioner's] release," the

21 Government has violated its own rule under § 241.13(i)(2). *See Tran*, 2025 WL 3005347,

22 at *2.

23     Second, an alien must "be notified of the reasons for revocation of his or her release"

24 that are actually "stated in the notification." § 241.13(i)(3); *see Tran*, 2025 WL 3005347,

25 at *3 (holding that this "notice must be in writing and contain all the reasons for the

26 revocation of the alien's release"). The Government states that "[o]n October 28, 2025,

27 Petitioner was served with a Notice of Revocation of Release and a Notice to Alien of

28 Interview for Review of Custody Status." Oppo. at 4 (citing Exh. 1). Petitioner was arrested

25cv02978-LL-VET

1    on June 16, 2025, and the Government has conceded that Petitioner did not receive the

2    Notice of Revocation form until more than four months later (on October 28, 2025). Oppo.

3    at 4. Accordingly, the Government failed to give Petitioner a copy of this form at or

4    reasonably close to his arrest. In addition, there is nothing in the record regarding what

5    Petitioner's arresting officers told him. The bare-bones explanation in the Notice of

6    Revocation of Release does not contain the reasons for the revocation of Petitioner's

7    release, thus it does not satisfy the "the due-process notification requirement of §

8    241.13(i)(3)." *See Tran*, 2025 WL 3005347, at *3

9        Finally, after re-detaining an alien who was out on supervision, ICE must "promptly"

10   conduct "an initial informal interview" to "afford the alien an opportunity to respond to the

11   reasons for revocation." § 241.13(i)(3). Apart from ICE not having reasons to re-detain

12   him based on changed circumstances, Petitioner also declares that "before [October 28,

13   2025], no one ever scheduled or gave [him] an informal interview where [he] was allowed

14   to explain [he] should be let go." Al Khatib Decl. ¶ 13. He further attests that "[n]o one has

15   ever told me what changed to make my removal more likely." *Id.*; *see also* Oppo. at 4

16   (conceding that "[o]n October 28, 2025, Petitioner was served a Notice of Revocation of

17   Release and a Notice to Alien of Interview for Review of Custody Status."). Based on the

18   record, the earliest that Petitioner had his informal interview was on November 3, 2025,

19   although it is unclear whether that interview took place. These failings, too, violated

20   Petitioner's due process rights. *See Tran*, 2025 WL 3005347, at *3 (finding the same); *see*

21   *also Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due

22   process of law is the opportunity to be heard.").

23       The Government does not dispute that it has failed to follow its own rules for re-

24   detainment, instead arguing that "even assuming the agency's compliance with the relevant

25   regulations fell short," Petitioner has not established prejudice nor a constitutional

26   violation. *See* Oppo. at 4. However, courts "have found that when ICE fails to follow its

27   own regulations in revoking release, the detention is unlawful, and the petitioner's release

28   must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6

25cv02978-LL-VET

1  (S.D. Cal. Oct. 22, 2025) (collecting cases). This is so even when, unlike here, the

2  Government has obtained a petitioner's travel document back to his or her country of origin

3  after their re-detainment. *See id*. at *1-6 (granting habeas and releasing the petitioner with

4  a deportation order back on supervision when the respondents failed to comply with §

5  241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin);

6  *Tran*, 2025 WL 3005347, at *1-4 (same).

7        Because the Government failed to comply with § 241.13(i) and § 241.4(l) when they

8  revoked Petitioner's supervised release, issuing a writ to reinstate that release is warranted.

9  This will be "without prejudice" to the remedies that the Government may otherwise have,

10  namely their readiness to deport Petitioner to the West Bank in the coming months. *See*

11  *Tran*, 2025 WL 3005347, at *3.

12  **III.    CONCLUSION**

13        Accordingly, the Court **GRANTS** the Petition for Writ of Habeas Corpus under 28

14  U.S.C. § 2241 and **DENIES AS MOOT** the Motion for Temporary Restraining Order. The

15  Government shall immediately release Petitioner from custody on the June 16, 2025

16  revocation of release and arrest. Petitioner shall comply with all conditions that were in

17  effect before his re-detainment. By **November 19, 2025**, at **4:00 p.m**., the parties must also

18  file a joint status report to confirm that Petitioner has been released, after which the Clerk

19  will close this case.

20  Dated: November 18, 2025

21

22                                        Honorable Linda Lopez

                                      United States District Judge

23

24

25

26

27

28

25cv02978-LL-VET